1   WILLIAM H. SHAWN
2   JAMES E. KING (CSB NO. 90103)
    SHAWNCOULSON, LLP
3   1850 M St., NW. Suite 280
    Washington, DC 20036
4   Telephone: (202) 331-7900
    Facsimile: (202) 403-3747
5
6   ANDREW P. BRIDGES (CSB No. 122761)
    ILANA S. RUBEL (CSB No. 221517)
7   LIWEN MAH (CSB No. 239033)
    FENWICK & WEST LLP
8   555 California Street, 12th Floor
    San Francisco, CA 94104
9   Telephone:  415.875.2300
    Facsimile:  415.281.1350
10
11  Attorneys for Defendants
    IWEB GROUP, INC.,
12  IWEB INTELLECTUAL PROPERTY, INC.,
    and IWEB TECHNOLOGIES, INC
13

<div style="text-align:left; font-size:small;">FENWICK & WEST LLP<br>ATTORNEYS AT LAW<br>SAN FRANCISCO</div>

14              UNITED STATES DISTRICT COURT

15            SOUTHERN DISTRICT OF CALIFORNIA

16

17  PERFECT 10, INC., a California        Case No. 13 CV 0328 BTM BLM
18  corporation,
                                          **MEMORANDUM OF POINTS**
19              Plaintiff,                **AND AUTHORITIES IN SUPPORT**
                                          **OF DEFENDANTS' MOTION TO**
20      v.                                **DISMISS**

21  IWEB GROUP, INC., a Canadian          Judge:    Hon. Barry Ted Moskowitz
22  company d/b/a/ iWeb.com; IWEB         Court:    15B
    INTELLECTUAL PROPERTY, INC., a        Date:     May 31, 2013
23  Canadian company d/b/a iWeb.com;      Time:     11:00 A.M.
24  IWEB TECHNOLOGIES, INC., a
    Canadian company d/b/a/ iWeb.com; and
25  DOES 1 through 100, inclusive         NO ORAL ARGUMENT UNLESS
26              Defendants.               REQUESTED BY COURT

27

28

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF POSITION ................................................................. 1

STATEMENT OF THE CASE ............................................................ 4

ARGUMENT ....................................................................................... 6

I.  THIS COURT LACKS PERSONAL JURISDICTION OVER
    DEFENDANTS. ........................................................................... 6

    A.  The General Jurisdiction Standard ................................... 7

    B.  The Specific Jurisdiction Standard ................................... 8

    C.  No Personal Jurisdiction ................................................... 9

II.  EVEN IF PLAINTIFF COULD ESTABLISH PERSONAL
     JURISDICTION OVER DEFENDANTS, THIS COMPLAINT
     SHOULD BE DISMISSED UNDER THE DOCTRINE OF
     *FORUM NON CONVENIENS.* ................................................ 11

III. VENUE IS IMPROPER IN THIS JUDICIAL DISTRICT. ........ 14

IV.  PERFECT 10'S COMPLAINT FAILS TO STATE FACTS
     SHOWING COPYRIGHT INFRINGEMENT. ......................... 14

    A.  Perfect 10 Fails to State a Claim for Direct Infringement. ................. 15

        1.  Perfect 10 Fails to Allege Volitional Infringing Acts. ............ 15

        2.  Perfect 10 Fails to Allege Copying in the United
            States. ................................................................... 19

    B.  Perfect 10 Fails to State a Claim for Contributory
        Infringement. ................................................................... 20

        1.  Perfect 10 Does Not Allege Acts of Intentional
            Inducement. ........................................................... 20

        2.  Perfect 10 Does Not Allege that Defendants' Services
            or Products Are Incapable of Substantial Non-
            Infringing Uses. ..................................................... 22

CONCLUSION ................................................................................. 22

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A&M Records, Inc. v. Napster, Inc.,*
  239 F.3d 1004 (9th Cir. 2001) ......................................................... 15

*Am. Cas. Co. of Reading, Pennsylvania v. Krieger,*
  181 F.3d 1113 (9th Cir. 1999) ......................................................... 14

*Amtower v. Photon Dynamics, Inc.,*
  158 Cal. App. 4th 1582 (2008) ........................................................ 9

*Ashcroft v. Iqbal,*
  556 U.S. 662; 129 S. Ct. 1937, 1949 (2009) ............................... 15, 22

*Bell Atlantic v. Twombly,*
  550 U.S. 544 (2007) ..................................................................... 15, 22

*Boschetto v. Hansing,*
  539 F.3d 1011 (9th Cir. 2008) ........................................................ 7, 8

*Brayton Purcell LLP v. Recordon & Recordon,*
  361 F.Supp.2d 1135 (N.D. Cal. 2005) .............................................. 9

*Cartoon Network LP v. CSC Holdings, Inc.,*
  536 F.3d 121 (2d Cir. 2008) ("*Cablevision*") ............................... 16

*CollegeSource, Inc. v. Academyone, Inc.,*
  653 F.3d 1066 (9th Cir. 2011) ........................................................ 7, 8

*Columbia Pictures Indus. v. Fung,* No. 10-55946, --- F.3d ----, 2013 WL
  1174151 (9th Cir. Mar. 21, 2013) ("*Fung*") ................................. 22

*Costar Group v. Loopnet, Inc.,*
  373 F.3d 544 (4th Cir. 2004) ("*Loopnet*") ....................... 15, 16, 17, 18

*Creative Technologies, Ltd. v. Aztech System PTE, LTE,*
  61 F.3d 696 (9th Cir. 1995) ............................................................ 12

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Ellison v. Robertson*,
   189 F. Supp. 2d 1051 (C.D. Cal. 2002), *rev 'd in part on other grounds*,
   357 F.3d 1072 (9th Cir. 2004) ........................................................................... 16

*Field v. Google, Inc.*,
   412 F. Supp. 2d 1106 (D. Nev. 2006) ..................................................... 15, 16, 18

*Fox Broad. Co., Inc. v. Dish Network*,
   No. 12-04529, 2012 WL 5938563 (C. D. Cal. Nov. 7, 2012)..................... 16, 17

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
   284 F.3d 1114 (9th Cir. 2002) ............................................................................ 8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   131 S. Ct. 2846 (2011) ....................................................................................... 7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) .......................................................................................... 7

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1954) .......................................................................................... 7

*Lake v. Lake*,
   817 F.2d 1416 (9th Cir. 1987) ........................................................................... 9

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ........................................................................... 15

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ("*Grokster*")............................................................20, 21, 22

*Nationaleft, Inc. v. Checkgateway, LLC*,
   No. 12cv1498, 2013 U.S. Dist. LEXIS 21305, at *11
   (S.D. Cal. Feb. 15, 2013)................................................................................... 6

*Omega S.A. v. Costco Wholesale Corp.*,
   541 F.3d 982 (9th Cir. 2008) ........................................................................... 19

*Pac. Atl. Trading Co. v. M/V Main Express*,
   758 F.2d 1325 (9th Cir. 1985) ........................................................................... 7

*Parker v. Google, Inc.*,
   422 F. Supp. 2d 492 (E.D. Pa. 2006) ............................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ................................................................. 21

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. 11-00905 (S.D. Cal. Aug. 25, 2011) ................................................ 14

*Perfect 10, Inc., v. Giganews, Inc.*,
   No. 11-CV-00905 ........................................................................................ 12

*Perfect 10, Inc. v. Visa Intl Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ................................................................... 21

*Perfect 10 v. iWeb Techs.*,
   No. 1:12-cv-1797 (ESH) (D.D.C. Nov. 5, 2012) ...................................... 4

*Piedmont Label Co. v. Sun Garden Packing Co.*,
   598 F.2d 491 (9th Cir.1979) ...................................................................... 14

*Religious Tech. Ctr. v. Netcom On-line Commc'n Sers., Inc.*,
   907 F. Supp 1361 (N.D. Cal. 1995) .......................................................... 16

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ...................................................................... 9

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ............................................................................. 20, 22

*Subafilms, Ltd. v. MGM-Pathe Commc'ns, Co.*,
   24 F.3d 1088 (9th Cir. 1994) (*en banc*) ................................................. 19

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) ..................................................................... 8

*UMG Recordings v. Shelter Capital Partners*,
   No. 09-55902, --- F.3d ----, 2013 WL 1092793
   (9th Cir. Mar. 14, 2013) ...................................................................... 18, 21

*Washington Dep't of Revenue v. www.dirtcheapcig.com., Inc.*,
   260 F. Supp. 2d 1048 (W.D. Wash. 2003) ................................................. 9

**STATUTES**

17 U.S.C. § 106 ........................................................................................... 15, 16

28 U.S.C. § 1391 ............................................................................................... 14

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Cal. Code Civ. Proc. § 410.10 ...................................................................7

**RULES**

Fed. R. Civ. P. 12(b) ...............................................................................4

Fed. R. Civ. P. 12(b)(2) ...........................................................................1

Fed. R. Civ. P. 12(b)(3) .........................................................................14

Fed. R. Civ. P. 41(a) ................................................................................1

Fed. R. Civ. P. 41(d) ...............................................................................1

Rule 11 ..............................................................................................2, 5

**OTHER AUTHORITIES**

www.sitespeedlab.com. ............................................................................5

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# SUMMARY OF POSITION

Plaintiff Perfect 10's complaint fails for at least four compelling threshold reasons.

1. This Court lacks personal jurisdiction under Fed. R. Civ. P. 12(b)(2) over Defendants, which have no presence in this Judicial District.

2. The doctrine of *forum non conveniens* applies to this more properly Canadian dispute.

3. Venue is improper in this Judicial District.

4. Perfect 10's complaint fails to state facts sufficient to establish a claim of copyright infringement.

This is a second effort by Plaintiff Perfect 10 to select an improper forum in which to litigate its claims against the Canadian iWeb companies. Barely three months ago, after forcing Defendants to expend substantial time, effort, and expense seeking dismissal of a lawsuit Perfect 10 had brought in the U.S. District Court for the District of Columbia, Perfect 10 summarily abandoned its nearly identical, one-count copyright infringement suit against Defendants in that District only to refile in an equally improper location, here in this District.[1]

This Perfect 10 lawsuit differs from Plaintiff's earlier District of Columbia filing in one profound respect—the core allegations underpinning its jurisdictional and venue assertions are patently false, as Perfect 10 is well aware after having twice been notified.  First, in an effort to establish jurisdiction and venue over the Canadian Defendants, Perfect 10 falsely alleged an affiliation between iWeb and

_____

[1] Following this Motion's filing to preserve personal jurisdiction objections, Defendants will also seek relief from this Court under Fed. R. Civ. P. 41(d) to require Plaintiff to first reimburse Defendants for their expenses incurred before Perfect 10 summarily dismissed its District of Columbia complaint following Plaintiffs' unilateral dismissal under Fed. R. Civ. P. 41(a).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  New Dream Network, originally a named defendant in this action. New Dream

2  Network served its Rule 11 motion on Perfect 10 and forced the latter to dismiss it

3  as a Defendant. Second, Perfect 10 continues to insist, incorrectly, that iWeb owns

4  or controls one or more data centers in San Diego. The accompanying declaration

5  of iWeb's Vice President of Finance, Pierre-Luc Toupin ("Toupin Decl."), exposes

6  the falsity of the allegation. iWeb advised Perfect 10 that Defendants operate no

7  data centers anywhere in the United States, whereupon Perfect 10 admitted its only

8  basis for alleging otherwise is an unverified and unexplained statement on a

9  defunct, non-responsive third-party website registered in the Ukraine.  iWeb

10  specifically advised Perfect 10 that its allegation of iWeb data centers in California

11  is completely untrue, that it is unsupported by any reliable source, and that it should

12  therefore be withdrawn. Perfect 10, however, refused to remove the allegation, the

13  only surviving basis for Perfect 10's claims of proper venue and jurisdiction,

14  because the complaint is otherwise devoid of any other factual allegations

15  indicating that iWeb has business operations or facilities anywhere in California.

16  After filing over 30 complaints in the Central District of California where

17  Perfect 10 is headquartered [2] Plaintiff (perhaps in light of a trend against it in that

18  District) started filing copyright lawsuits in this District, evidently hoping for better

19  outcomes. To support its filings in this Court, Perfect 10 has now constructed a

20  fabric of misrepresentation to present this District as a proper venue. Contrary to its

21  representations, however, Perfect 10 remains domiciled in the Central District, and

22  there is no Defendant in this District. Plaintiff was forced to drop New Dream

23  Network as a Defendant after misrepresenting New Dream Network's domicile as

24  this judicial district and after falsely claiming New Dream Network has an

25  affiliation with the iWeb Defendants. Shawn Decl. ¶¶ 9-10.

26  The websites Perfect 10 now identifies are neither owned, operated, nor

27

28  [2] See Declaration of William H. Shawn ("Shawn Decl."), Exh. I.

Fenwick & West LLP
Attorneys at Law
San Francisco

controlled by any iWeb Defendant. iWeb Technologies, a Canadian Company with offices, employees and facilities only in Montreal, Quebec, Canada, simply physically stores and supports hardware at its Montreal facilities. iWeb's customers may choose to store their own website or those of third parties with the hardware provided to them—this is something iWeb does not control.

Further, not only is there no personal jurisdiction over iWeb Group or its operating company, iWeb Technologies[3], but the actual operators of the allegedly infringing websites Perfect 10 cites in its complaint are also apparently not in this judicial district. Since Perfect 10 cannot lawfully join all three iWeb Defendants here, let alone Plaintiffs' 100 Doe Defendants, this forum is an improper venue.

Plaintiff's best case, if any, is dismissal under the doctrine of *forum non conveniens* that suggests this Court exercise its discretion and dismiss the case so Perfect 10 can bring its case, if it chooses, in Canada. Perfect 10's litigation campaign has also previously extended to the courts of Canada; it can easily reach Canadian companies; and Canadian courts can adjudicate Canadian and United States law.

Beyond these threshold jurisdictional and procedural flaws, Perfect 10's one-count complaint fails to allege facts sufficient to state a claim of copyright infringement. The Complaint lacks allegations of volitional acts, fails to allege copying in the United States by the Canadian Defendants or distribution of material objects by sale or other transfer of ownership, and fails to allege acts constituting contributory infringement either by intentional inducement or by furnishing

---

[3] Plaintiff insists the three iWeb companies are alter egos, and thus collectively subject to suit and liability. Paragraph 14 of the attached Toupin Declaration rebuts that argument. For brevity and simplicity, however, this Motion may reference the Defendants collectively without waiving Defendants' objections to Plaintiff's alter ego argument.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   products or services that are incapable of substantial non-infringing use.

2   ## STATEMENT OF THE CASE

3       Perfect 10 is a California corporation based in Los Angeles County, where it

4   has launched over 30 copyright infringement lawsuits against a host of companies

5   and individuals, including Visa, Google, Amazon.com, and Microsoft. Employing a

6   familiar refrain decrying how copyright infringement somehow destroyed its earlier

7   print magazine devoted to depicting "natural" nude women, Perfect 10 consistently

8   claims it only earns some $80,000 annually from selling subscriptions to its website

9   featuring nude photos.

10       Last November, Perfect 10 filed a nearly identical lawsuit against Defendants

11   in the District of Columbia. *Perfect 10 v. iWeb Techs.*, No. 1:12-cv-1797 (ESH)

12   (D.D.C. Nov. 5, 2012). It summarily abandoned that suit after Defendants filed

13   their motion to dismiss on Rule 12(b) grounds. The current incarnation of

14   Perfect 10's lawsuit, in this Court, makes identical allegations and seeks the same

15   relief while relying upon facts that Defendants already substantially impeached in

16   the D.C. lawsuit, adding new allegations against New Dream Network and asserting

17   a connection between that company and iWeb.

18       In this action, when New Dream Network served Perfect 10 with a Rule 11

19   motion because of the falsity of Perfect 10's allegations against it, Perfect 10

20   promptly capitulated and summarily dismissed that Defendant.[4] Perfect 10 then

21   agreed with iWeb to nullify certain false references in the complaint to an alleged

22   New Dream Network affiliation, yet Perfect 10 refused to amend its complaint to

23   allow this Court to see clearly what little remains of Perfect 10's original

24

25

26

27

28   [4] *See* Shawn Decl., Exh. E (Rule 11 Motion served by New Dream Network).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

allegations.[5]

Perfect 10's partial annulment of several of its allegations without actually amending its complaint to clarify the implications of that annulment allows Perfect 10 to leave the complaint in a confused status in order to imply that New Dream Network's customers are iWeb customers.

The evidence of record, through Defendants' attached declarations, establishes all the Canadian Defendants' activities are in Canada, including the business of Defendant iWeb Technologies, *the only iWeb operating entity* Plaintiff sued. *See, e.g.*, Toupin Decl. ¶¶ 2-10, 14; Declaration of Eric Chouinard ¶¶ 2,4; Declaration of Martin Leclair ¶¶ 2-3. Bluntly, contrary to Perfect 10's allegations, no Defendant has or has ever had any server farm or data center in the United States or anywhere outside Montreal, Quebec, Canada. No Defendant operates any website of which Perfect 10 complains; here, rather, Defendant iWeb Technologies, the only operating company, simply houses in Montreal hardware operated and controlled by thousands of customers which, in turn, operate their own websites (or those of others). *Id*. Plaintiff's allegations as to purported iWeb data centers in California evidently rest solely upon an unexplained statement on a Ukrainian website, "www.sitespeedlab.com."  This site provides no description of its information sourcing or methodology, does not identify its operator, does not appear to have been updated since 2011, and its administrator did not respond to counsel's contact attempt. Declaration of Ilana S. Rubel ("Rubel Decl.") ¶¶ 2-12.

---

[5] As shown in the Shawn Declaration, Perfect 10's excising stipulation left much offending New Dream Network material unscathed in the complaint, and even that which can be ignored by stipulation facially appears included to the uninitiated. Perfect 10's fallacious claims about an iWeb server farm still remain in its complaint, contrary notifications to Perfect 10 notwithstanding. *See* Shawn Decl., Exhs. G, H.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Perfect 10 is an experienced Canadian litigant where, among other things, it sued Google for copyright infringement. The attached expert Declaration of Jean-Philippe Mikus ("Mikus Decl.") chronicles Perfect 10's activities before the Canadian courts. Although Perfect 10 has now chosen the Southern District of California as a venue for its latest lawsuit, the Mikus expert declaration suggests that Canada may be a proper, and better, forum to resolve Perfect 10's claims.

## ARGUMENT

### I.   THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS.

No Defendant has a California presence. Perfect 10's dismissal of New Dream Network, the defendant Perfect 10 erroneously claimed was affiliated with Defendants and based in this District, underscores this. New Dream Network was the linchpin of Perfect 10's jurisdiction and venue arguments, because the iWeb Defendants have no presence in California. The Court should dismiss the action as to all Defendants for lack of personal jurisdiction.

Perfect 10 bears the burden of establishing personal jurisdiction. As this Court stated in *Nationaleft, Inc., v. Checkgateway, LLC*:

> In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. In the absence of an evidentiary hearing, "the plaintiff need only make a prima facie showing of the jurisdictional facts." Id. (quotation omitted). "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true. We may not assume the truth of allegations in a pleading which are contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor.

No. 12cv1498, 2013 U.S. Dist. LEXIS 21305, at *11 (S.D. Cal. Feb. 15, 2013) (Citations and quotations omitted).

The exercise of personal jurisdiction over a nonresident defendant must comport with the state's long-arm statute and satisfy the due process clause of the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

United States Constitution. *See Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1327 (9th Cir. 1985). "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *see also* Cal. Code Civ. Proc. § 410.10.

> For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'

*CollegeSource, Inc. v. Academyone, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1954)). Under a due process analysis, a defendant may be subject to either general or specific personal jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

### A.    The General Jurisdiction Standard

A court may assert general jurisdiction over foreign corporations to hear claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). "For general jurisdiction to exist over a nonresident defendant . . . ., the defendant must engage in 'continuous and systematic general business contacts, that approximate physical presence in the forum state." *CollegeSource*, 653 F.3d at 1073. The standard is met only by continuous corporate operations within a state that are thought so substantial and of such a nature as to justify suit against the defendant on causes of action arising from dealings entirely distinct from those activities. *Id.* (quotation omitted). "To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, we consider their '[l]ongevity,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.'" *Id.* (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006)). "The standard for general jurisdiction is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id.* (quotation omitted).

## B.     The Specific Jurisdiction Standard

A court exercises specific personal jurisdiction over a defendant only where "the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (citation omitted). The Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quotation omitted).

The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable. But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed. *Id.*

Under the first prong of the three-part specific jurisdiction test, plaintiff must establish defendant

> purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California.... [A]vailment and direction are ... two distinct concepts. A purposeful

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citations omitted).

Whether an action is based on contract or tort depends upon the nature of the right sued upon, not the form of the pleading or relief demanded. If based on breach of promise it is contractual; if based on breach of a noncontractual duty it is tortious. If unclear the action will be considered based on contract rather than tort.

*Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1602 (2008).

To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state. The purposeful availment requirement tests the fundamental determination of whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

For copyright infringement claims, test is met when "plaintiff brings the suit in the forum where the plaintiff resides, and the defendant knows that the plaintiff resides there." *Brayton Purcell LLP v. Recordon & Recordon,* 361 F.Supp.2d 1135, 1140 (N.D. Cal. 2005). If this effects test is met, "[i]t is not required that defendant be physically present within, or have physical contact with the forum, provided his efforts are physically present within, or have physical contact with, the forum." *Washington Dep't of Revenue v. www.dirtcheapcig.com., Inc.*, 260 F. Supp. 2d 1048 (W.D. Wash. 2003).

## C.    No Personal Jurisdiction

Here, Plaintiff cannot meet its burden because its bad faith avoidance of its home District eliminates personal jurisdiction under *Brayton*. Similarly, Perfect 10

cannot credibly argue general jurisdiction over the iWeb Defendants because those Defendants have no "substantial, continuous and systemic" presence in California, as underscored by the absence of the Canadian Defendants' employees or facilities of any kind in California or a registration to do business in California. To manufacture an appearance of a "substantial, continuous and systemic" presence in California, Plaintiff has falsely alleged that Defendants somehow operate a server farm at some undisclosed California location. That allegation is as false as was Perfect 10's allegations about New Dream Network, yet Perfect 10 has refused to correct it. **As the attached Toupin Declaration establishes, no Defendant owns or operates any servers in California, contrary to Perfect 10's erroneous allegations at paragraphs 1 and 7 of its Complaint.** Toupin Decl. ¶¶ 2-9; *see also* Shawn Decl. ¶ 5, Exh. C; Rubel Decl. ¶¶ 2-12.

Perfect 10 also cannot credibly maintain any Defendant committed any alleged act in this Judicial District to expose any such Defendant to special jurisdiction. First, contrary to the allegations in paragraph 9 of the complaint, here iWeb Technologies' (the only operating iWeb company) activities are limited to providing server hardware (and related support). The server is controlled by iWeb's customers and only they decide which websites may or may not be stored on the server hardware and to whom the content of such websites is to be transmitted. Plaintiff's claim that iWeb is "hosting . . . infringing California based websites" (*id*.) distorts the true nature of the services offered by iWeb Technologies: here, no iWeb company decides which website is to be hosted on hardware it provides and if and where the website's content may be disseminated. Furthermore, no iWeb company operates any website other than its own, and iWeb's own websites have no relation whatsoever with the Plaintiff's alleged copyrights.  Perfect 10 evidently aimed that accusation at the supposed connection between iWeb and New Dream Network, the named Defendant that it has already dismissed with prejudice and whose alleged connection with iWeb the Plaintiff has now excised from its

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

allegations.

Perfect 10's references to one Florida, one unknown, and two Tennessee websites, at paragraph 9 of its complaint, do not support personal jurisdiction in California. In addition to the fact that the iWeb companies do not host websites, Plaintiff cannot show that any alleged infringement on such sites has taken place in California to support special personal jurisdiction. Indeed, Perfect 10 never alleges where any such websites' alleged infringement takes place. *Id.*

Finally Plaintiff's reference to iNet Ready in La Jolla, California and KT Tran in San Jose California is puzzling, at best. Although Perfect 10 insists all Defendants have a reseller agreement with those entities, not even Perfect 10's complaint corresponds any such activity to the alleged infringement.

At bottom, after enduring a previous round on identical personal jurisdiction issues, it is still apparent Perfect 10 misunderstands the iWeb involved operations. Here, no iWeb Defendant maintains a website hosting any allegedly- infringing content. Defendants only provide hardware and support such hardware in Montreal, Quebec, Canada. As such, no iWeb Defendant has perpetrated or facilitated any acts of infringement anywhere in the United States. Accordingly, there is no lawful general or specific personal jurisdiction over any iWeb Defendants.

## II.   EVEN IF PLAINTIFF COULD ESTABLISH PERSONAL JURISDICTION OVER DEFENDANTS, THIS COMPLAINT SHOULD BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*.

Even if Perfect 10 were to surmount its personal jurisdiction obstacle, all signs in this dispute point, if anywhere, to the courts of Canada where Perfect 10 has previously litigated as the proper location of the dispute. Accordingly, dismissal is proper under the doctrine of *forum non conveniens*.

Defendants have proffered an expert opinion of Jean-Philippe Mikus, a leading Canadian copyright law expert, who has carefully explained the alternative

Fenwick & West LLP
Attorneys at Law
San Francisco

Canadian forum's copyright law, and who has provided copies of Canadian court documents chronicling Perfect 10's litigation in Canada, including those establishing *Perfect 10 represented the Canadian forum to be the preferable alternative*. Mikus Decl.

In *Creative Technologies, Ltd. v. Aztech System PTE, LTE*, 61 F.3d 696, 699 (9th Cir. 1995), the Ninth Circuit affirmed a dismissal of a copyright action on *forum non conveniens* grounds. The court stated that the party moving for *forum non conveniens* dismissal must demonstrate: (1) the existence of an adequate alternative forum; and (2) that the balance of relevant private and public interest factors favor dismissal.

Defendants meet this burden. First, Perfect 10 is not based in this District; it is based in Los Angeles, in the Central District of California where it filed the overwhelming majority of its copyright lawsuits. Judge Huff of this Court recently transferred another case from this District to the Central District, recognizing Perfect 10's lack of connection with this District and its strong connection with the Central District. *See* Rubel Decl., Exh. M [copy of ruling from *Perfect 10, Inc., v. Giganews, Inc.*, No. 11-CV-00905 H (MDD) (S.D. Cal. Mar. 8, 2013)].

It is also clear any cause of action at issue primarily touches Canadian law since iWeb's activities occur in Canada. Canada's courts are uniquely qualified to resolve any such issues, whether under Canadian or U.S. law, not this Court where Perfect 10 has no legitimate business presence, despite its representations to the contrary. As Mr. Mikus explains in his opinion, the Courts of Canada could even entertain any related U.S. copyright law issues, an insight based, in part, on Mr. Mikus's acknowledgement of the fact that because both countries are signatories to the same international treaty, the 1886 *Berne Convention for the Protection of Literary and Artistic Works*, as recently enhanced by the *World Intellectual Property Organization Copyright Treaty of 1996*, under which both countries have promulgated similar laws. *See* Mikus Decl., Exh. 4, at ¶ 68.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Besides the foregoing public interest factors, private interests also favor dismissal of this action for Perfect 10 to pursue its claim in Canada. First, all Defendants' witnesses are located in Canada and, by contrast, Perfect 10 has not identified a single witness in this District. Second, discovery in Canada not only is substantially similar to that in the United States, as Mr. Mikus explains, but may actually be far more advantageous to Perfect 10.  If the case were to move forward here, Perfect 10's discovery in Canada would be far more expensive and complex, requiring compliance with The Hague Convention and also facing limitations under Canadian law on discovery for foreign litigation that would not exist in Canadian litigation. Indeed, as Mr. Mikus explains, Quebec law would prohibit removal of business information from Canada, so any such discovery by Perfect 10 could well be unlawful when removed to another jurisdiction like California.[6] Third, Canada is the only conceivable forum where all three Defendants can be found. Similarly, only in Canada can Defendants' vendors and Defendant iWeb Technologies' customers' hardware be found.

Under any perspective, Canada is a far superior forum to resolve Perfect 10's claims. Since American copyright law is not even at the heart of the dispute between iWeb and Perfect 10, there is little justification for prosecuting this action before this Court. The complaint should therefore be dismissed for *forum non conveniens*.

---

[6] Mr. Mikus explains, at paragraphs 55 through 68 of his Declaration, that Canadian Federal and Quebec Provincial privacy legislation impedes or outright bars transmission of much information outside Canada. He advised, "if the identity and contact information of customers form part of the business records of a Quebec company, it will be impossible (whether in electronic form or not) for the disclosure of this information to be "compelled." Their disclosure would therefore not be permitted pursuant to Section 18 of the Personal Information Protection Act.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### III.   VENUE IS IMPROPER IN THIS JUDICIAL DISTRICT.

Perfect 10's lawsuit also offends Fed. R. Civ. P. 12(b)(3) because venue is improper in the Southern District of California. Indeed, given Perfect 10's clear misrepresentation of its business address, in an apparent effort to avoid the Central District of California, and after Perfect 10 also unilaterally abandoned its District of Columbia lawsuit, it is clear Perfect 10 is now forum shopping, a practice to be discouraged. *See generally Am. Cas. Co. of Reading, Pennsylvania v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999); *see also* Rubel Decl., Exh. N [Order (Docket No. 56), *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-00905 (S.D. Cal. Aug. 25, 2011)] (transferring another Perfect 10 copyright case from the Southern District to the Central District of California, noting that Perfect 10 failed to show a specific connection to the Southern District).

On a motion to dismiss under Rule 12(b)(3), a court need not accept the pleadings as true and may consider facts outside the pleadings. *Id*. Once the defendant has challenged the propriety of venue in a given court, the plaintiff bears the burden of showing venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co*., 598 F.2d 491, 496 (9th Cir.1979).

Venue is improper under 28 U.S.C. § 1391 where a court lacks personal jurisdiction, and therefore the arguments above regarding the lack of personal jurisdiction apply also to establish that venue is improper in this District. Neither Defendants nor Plaintiff resides here. Even New Dream Network resided in the Central District, not here. As such, this District has no connection to the Parties or this dispute. Defendants' *forum non conveniens* arguments also lend support to the venue objections here. The complaint should therefore be dismissed.

### IV.   PERFECT 10'S COMPLAINT FAILS TO STATE FACTS SHOWING COPYRIGHT INFRINGEMENT.

Apart from the personal jurisdiction and venue defects, Perfect 10's claim for copyright infringement fails because Plaintiff (in its second attempt to plead a case

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

against iWeb) never alleges the elements necessary to state a claim for direct or secondary infringement. The Court should therefore dismiss the action with prejudice. Specifically, (i) Perfect 10 fails plausibly to allege volitional acts, which failure materially erodes all its direct infringement claims; (ii) Perfect 10 fails to allege copying in the United States; and (iii) Perfect 10 does not allege acts of intentional inducement or that Defendants' services or products are incapable of substantial non-infringing use.

Dismissal of a claim is appropriate when a plaintiff fails to plead facts demonstrating a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The well-pleaded allegation rule, where allegations must be accepted as true, does not apply to legal conclusions. *Id*. A complaint with "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient to survive a motion to dismiss. *Id*. The "plausibility standard . . . asks for more than the sheer possibility that a defendant has acted unlawfully." *Id*. Courts may rightly consider, on a motion to dismiss, documents to which pleadings refer. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

### A.   Perfect 10 Fails to State a Claim for Direct Infringement.

#### 1.   Perfect 10 Fails to Allege Volitional Infringing Acts.

For direct infringement, Perfect 10 must allege Defendants violated at least one of Perfect 10's copyright rights under 17 U.S.C. § 106. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Here, however, Perfect 10 fails to allege facts showing that iWeb engaged in any "volitional" act of infringement — a prerequisite for any direct infringement claim. Perfect 10's omission is fatal because direct infringement requires "some element of volition or causation" by a defendant. *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 297 (E.D. Pa. 2006); *Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006); *Costar Group v. Loopnet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) ("*Loopnet*") ;

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Cartoon Network LP v. CSC Holdings, Inc*., 536 F.3d 121, 124 (2d Cir. 2008) ("*Cablevision*").

Courts regularly hold Internet service providers' automated activities, including those Perfect 10 now challenges, are not "volitional" acts causing violation of any Section 106 right; consequently, such acts do not support a claim for direct infringement. *See, e.g.*, *Field*, 412 F. Supp. 2d at 1115 (Google not liable for automatic copying during search engine's "caching" process); *Loopnet*, 373 F.3d at 555 (ISP not liable for system by which users could upload copyrighted photographs). Courts, including this one, also apply this causation requirement in other contexts. *See Fox Broad. Co., Inc. v. Dish Network*, No. 12-04529, 2012 WL 5938563, at *7-11 (C. D. Cal. Nov. 7, 2012) ("*Dish*") (Dish Network not liable because users of its DVR service were the "most significant and important cause" of the copy); *Cablevision*, 536 F.3d at 131 (Cablevision not liable where users of its remote storage DVR caused the copies). As the Second Circuit explained, "a significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct." *Cablevision*, 536 F.3d at 131.

Merely operating a system that automatically copies and stores materials and makes them available to others "does not constitute any volitional act" to support a claim for direct infringement. *See* Rubel Decl., Exh. M, at 10-11 (finding that Perfect 10 failed sufficiently to allege defendants themselves committed the alleged infringing acts); see *also Religious Tech. Ctr. v. Netcom On-line Commc'n Sers., Inc.,* 907 F. Supp 1361 (N.D. Cal. 1995). Direct liability applies only to users responsible for posting the infringing articles. *See Id.* at 1372-73; *Ellison v. Robertson*, 189 F. Supp. 2d 1051, 1057 (C.D. Cal. 2002), *rev 'd in part on other grounds*, 357 F.3d 1072 (9th Cir. 2004).

Here, Perfect 10 fails to plead facts plausibly demonstrating iWeb engaged in

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

any volitional infringing act; to the contrary, the Complaint refers to the actions of third party customers using iWeb's computer servers. For example, Perfect 10 alleges iWeb's servers host websites and refers to "infringing websites operated in California" but makes no factually supported allegation that iWeb owned, created, operated, or directed those websites. Compl. ¶¶ 21, 26. Perfect 10 cites iWeb's "more than 21,000 customers in 150 countries" but never alleges that iWeb owns, operates, or directs any such customers, let alone that any engaged in the alleged copying.[7] *Id*. Perfect 10 does not—and cannot—offer any factual allegations that iWeb has any involvement with customers' websites, except maintaining computer servers and using automated processes in facilitating customers' use of those servers. Perfect 10 thus fails to state a claim for direct liability.

Even where a party can determine the content on a server (which is not typically the case for iWeb because servers are customer-controlled), that would not suffice for a claim of direct infringement. *See* Rubel Decl., Exh. M, at 11 ("[a]ll owners of internet servers presumably can determine the content on their servers. To hold that such control gives rise to a direct infringement claim would create 'unreasonable liability.'").

Perfect 10 also alleges iWeb "could have and should have ended the [third parties' alleged] infringement" by "removing the infringing images or by refusing to host the identified allegedly infringing websites." Id. ¶ 28. But these allegations do not suggest any volitional act by iWeb to cause the alleged infringement by those websites or images. Whether iWeb has any control over the supposedly infringing content after it is already on the server is irrelevant. *See Dish*, 2012 WL 5938563, at *10 (noting that control after the copies are made has no bearing on whether the provider causes the copies in the first place); *Loopnet*, 373 F. 3d at 547

---

[7] The only implication to the contrary is a boilerplate paragraph, lacking any factual allegation, aimed at 100 "Doe" defendants. *Id.* ¶ 24.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   (holding that ISP's ability to delete content was not relevant to volition, which

2   focuses on the conduct that caused the copy).

3        Even where a defendant has had far more involvement than merely providing

4   computer servers for another to operate, courts have found the requisite volition for

5   infringement to be lacking. In *Field*, the court held that Google, which designed an

6   automated program to "crawl" the Internet for websites that it would then copy and

7   store in a cache for quick retrieval for Google's search engine, did not engage in a

8   volitional act of infringement. 412 F. Supp. 2d at 1115 (finding "Google is passive

9   in the process" and "Google's computers respond automatically to the user's

10  request."). In *Loopnet*, the Fourth Circuit held that an ISP that allowed the upload

11  of images without the copyright owner's authorization lacked the requisite volition

12  for infringement even though, before making images publicly viewable, the ISP

13  automatically copied uploaded images to an internal computer to be screened by an

14  employee for obvious indicia of infringement. 373 F.3d at 555 (ISP not liable for

15  system by which users could upload copyrighted photographs). The *Loopnet* court

16  explained:

> There are thousands of owners, contractors, servers, and users
> involved in the Internet whose role involves the storage and
> transmission of data in the establishment and maintenance of an
> Internet facility. Yet their conduct is not truly "copying" as understood
> by the Act; rather, they are conduits from or to would-be copiers and
> have no interest in the copy itself. . . . To conclude that these persons
> are copyright infringers simply because they are involved in the
> ownership, operation, or maintenance of a transmission facility that
> automatically records material — copyrighted or not—would miss the
> thrust of the protections afforded by the Copyright Act.

24  *Id.* at 551 (citation omitted); *see also UMG Recordings v. Shelter Capital Partners*,

25  No. 09-55902, --- F.3d ----, 2013 WL 1092793, at *9 (9th Cir. Mar. 14, 2013)

26  (distinguishing copying processes "initiated entirely at the volition of [] users" from

27  acts of a defendant who "actively participate[s] in or supervise[s] file uploading" or

28  "preview[s] or select[s] the files before the upload is completed.").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**2.      Perfect 10 Fails to Allege Copying in the United States.**

Further, since Perfect 10 voices no factual allegations of infringing acts in the United States to support any claim of direct copyright infringement against iWeb, it fails to state such a claim as a matter of law. The United States' Copyright Act does not reach acts outside the United States. *See Subafilms, Ltd. v. MGM-Pathe Commc'ns, Co.*, 24 F.3d 1088, 1091 (9th Cir. 1994) (*en banc*); *Omega S.A. v. Costco Wholesale Corp.*, 541 F.3d 982, 987-88 (9th Cir. 2008). In *Subafilms*, the Ninth Circuit reaffirmed the "undisputed axiom" that the "United States' copyright laws have no application to extraterritorial infringement," noting "the principle of territoriality consistently has been reaffirmed." 24 F.3d at 1095-96 (citations omitted). The Ninth Circuit rejected the assertion that the Copyright Act could cover acts outside the United States, if the acts cause "adverse effects" in the United States, and declined to extend extraterritorial application of the statute unless Congress clearly expressed its intent to do so. *Id.*

Here, Perfect 10 acknowledges that Defendants "are Canadian companies" (Compl. ¶ 20), and indeed iWeb has no operations, offices, or corporate registration in the United States, yet the Complaint provides no factual allegations or plausible basis to conclude iWeb copied or engaged in any infringing acts within the United States. Perfect 10 only alleges "infringing websites operated in California" (*id*. ¶ 21), that certain websites have Internet registrations in the United States (*id*. ¶ 26), and that iWeb conducts business with California customers (*id*. ¶ 1), but it glaringly omits any allegation that the storage or copying for those infringing websites occurs outside Canada.

As noted, iWeb has no data centers in this district or anywhere else outside Canada, contrary to Perfect 10's mistaken assertions.[8] If iWeb had computer servers

---

[8] Defendants have attempted to resolve informally such erroneous allegations without success at this writing. *See* Shawn Decl. ¶ 11.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

and conducted web hosting anywhere the United States, Perfect 10 tellingly fails to claim any of the allegedly-infringing activity involved such U.S.-based servers. Furthermore, even if iWeb authorized American vendors to resell space on iWeb's dedicated servers —which it does not—such would not alter the truth that any copying could only occur in Canada, the locus of iWeb's servers. While Perfect 10 does allege users in the United States infringed by downloading its copyrighted images, that third party conduct would do nothing to establish a claim of direct infringement against iWeb. Accordingly, any claim of direct infringement must be dismissed for failure to state a claim.

### B.   Perfect 10 Fails to State a Claim for Contributory Infringement.

#### 1.   Perfect 10 Does Not Allege Acts of Intentional Inducement.

A defendant "infringes contributorily by intentionally inducing or encouraging direct infringement" by a third party. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("*Grokster*"). The *Grokster* standard requires "'active steps . . . taken to encourage direct infringement,' such as advertising an infringing use or instructing how to engage in an infringing use, [which] show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use." *Id*. at 936 (citations omitted).

*Grokster* thus clarified two important limitations on contributory liability. First, mere knowledge of infringement is not enough; intent to induce or encourage it is required. Second, wrongful intent does not arise merely from knowledge that the product or service is being used to infringe where it is also capable of substantial non-infringing uses. *Grokster*, 545 U.S. at 933*; see also Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 442 (1984) (no liability where manufacturer knew some customers would infringe). Rather, to impute intent to encourage infringement, a court must find that the defendant "knowingly takes

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MPA ISO DEFENDANTS' RULE 12(b)(2),
12(b)(3) & 12(b)(6) MOTION TO DISMISS

20

CASE NO. 13 CV 0328 BTM BLM

steps that are substantially certain to result in such direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007). A defendant must "'ha[ve] actual knowledge that specific infringing material is available using its system,' and can 'take simple measures to prevent further damage' to copyrighted works, yet continues to provide access to infringing works." *Id.* at 1172 (emphasis in original) (citations omitted). Here, Perfect 10 fails to allege facts showing Defendants' intent to induce or encourage infringement or Defendants' failure to take "simple measures" to avoid infringements in the face of any actual knowledge of specific infringing activity.

The *Grokster* doctrine holds inducement liability may be imposed only where a product or service is provided "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." *Columbia Pictures Indus. v. Fung*, No. 10-55946, --- F.3d ----, 2013 WL 1174151, at *11 (9th Cir. Mar. 21, 2013) (citing *Grokster* 545 U.S. at 936-37). *Grokster* "requires a high degree of proof of the improper object." *Id.* Thus, for inducement liability, "it is crucial [for Plaintiff] to establish that [Defendants] 'communicated an inducing message to their . . . users,' the classic example of which is an 'advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations." *Perfect 10, Inc. v. Visa Intl Serv. Ass'n*, 494 F.3d 788, 801 (9th Cir. 2007) (quoting *Grokster*, 545 U.S. at 937) (emphasis added).

Perfect 10 has not even approached pleading facts necessary to state a claim under an inducement theory, and could not credibly do so, because iWeb is a passive provider of dedicated servers, and has no input or control over what customers choose to put on their servers. Perfect 10 thus understandably fails to allege facts to show iWeb purportedly encouraged infringing use, or even that Defendants communicated any affirmative message. Tellingly, iWeb's alleged conduct, supposedly showing that iWeb "induced, caused, and/or materially

contributed" to infringement, was merely "allowing" infringement "to continue on their servers," operating unidentified websites, and "providing hosting and Internet services." Compl. ¶ 35. Without more, providing and continuing to provide customers use of computer servers, without active steps or clear expressions constituting encouragement or inducement of infringement by the users of the servers, does not meet the *Grokster* test. Nor does a naked allegation that iWeb operates websites, with no mention of what those websites were or what they display, support an infringement claim.

### 2.    Perfect 10 Does Not Allege that Defendants' Services or Products Are Incapable of Substantial Non-Infringing Uses.

In *Grokster*, the Supreme Court, following Sony, ruled that intent may not be imputed from general knowledge that a product is being used to infringe where it is capable of substantial non-infringing uses. *See Grokster*, 545 U.S. at 933; *Sony*, 464 U.S. at 442. The Ninth Circuit has explained that this standard also applies to services and not just products. *See Fung*, 2013 WL 1174151, at *10. Computer servers, and websites that may be stored on them, are capable of non-infringing uses. Perfect 10 cannot seriously allege that all or most servers and websites engage in infringement of its copyrighted works. Likewise, Perfect 10 never alleges that only infringers use iWeb's dedicated servers.

Since Perfect 10 has not alleged plausible facts under *Iqbal* and *Twombly* supporting any basis for imputing intent to induce infringement, the Court should dismiss the claim for contributory infringement.

### CONCLUSION

Because this Court lacks personal jurisdiction, this District is an improper and inconvenient venue, and Perfect 10 has failed to state any copyright claim against Defendants, notwithstanding this its second effort to sue the Defendants, this Court should dismiss Perfect 10's lawsuit in its entirety with prejudice. Defendants separately furnish a proposed form of order.

Dated:      April 22, 2013                    SHAWNCOULSON LLP


By:  /s/ James E. King                         

     James E. King

     Attorneys for Defendants
     IWEB GROUP, INC.,
     IWEB INTELLECTUALPROPERTY,
     INC., and
     IWEB TECHNOLOGIES, INC.


     Email: jking@shawncoulson.com

LIT/1356468.3