1
2
3
4
5
6
7
8     UNITED STATES DISTRICT COURT
9     SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  PERFECT 10, INC., a California corporation, | Case No. 13 CV 0328 BTM BLM |
| 13                    Plaintiff, | **DECLARATION OF PIERRE-LUC TOUPIN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| 14           v. | |
| 15  IWEB GROUP, INC., a Canadian company d/b/a/ iWeb.com; IWEB INTELLECTUAL PROPERTY, INC., a Canadian company d/b/a iWeb.com; IWEB TECHNOLOGIES, INC., a Canadian company d/b/a/ iWeb.com; and DOES 1 through 100, inclusive                    Defendants. | Judge:    Hon. Barry Ted Moskowitz<br>Court:    15B<br>Date:     May 31, 2013<br>Time:     11:00 A.M.<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY COURT |

22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

I, Pierre-Luc Toupin, declare pursuant to 28 U.S.C. § 1746 as follows:

1.     My name is Pierre-Luc Toupin, and I am the Vice-President-Finance of iWeb Technologies Inc. ("iWeb Technologies"), a Canadian company, which has been sued in this Southern District of California action. I previously submitted an Affidavit in support of Defendants' motion to dismiss Plaintiff Perfect 10's ("Plaintiff" or "Perfect 10") nearly identical complaint brought in the District of Columbia late last year, and summarily dismissed by Perfect 10 earlier this year. I am familiar with the facts underlying this case, and I am authorized to submit this Declaration supporting Defendants' motion to dismiss the latest complaint filed by Perfect 10, a California corporation. I have personal knowledge of all facts stated in this Declaration.

2.     iWeb Technologies is a Canadian-based company domiciled at 20 Place du commerce, Nun's Island, Montreal (Quebec) Canada H3D 1Z6, and operating 90,000 square feet of operations' centers at several local Montreal, Quebec, Canada locations commonly called "server farms".

3.     We provide to our customers the use of physical infrastructure at our facilities by offering two principal types of services. The first type of service is providing a "dedicated server" (also called iWeb MyServerNow in our terms and conditions) pursuant to which we provide for our customers' exclusive use one or more servers installed in our facilities in Montreal. We are only responsible for the physical maintenance of such installed servers by fixing any of their hardware failures, and for providing redundant cooling, electrical supply and Internet connectivity to ensure the proper operation of that hardware. We currently have approximately 18,000 dedicated servers in our server farms in the Montreal region.

4.     The other principal type of service we offer is our co-location services by which the customer installs its own servers in a "cage" located inside our server farms. In that case, we only provide redundant cooling, electrical supply and Internet connectivity. In short, the only real difference between the two types of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  services is we own the server in the former, and the customer owns the server in the

2  latter.

3      5.     The only type of packages at issue in Perfect 10's notices are dedicated

4  servers packages. All such servers are installed in Montreal, Quebec, Canada, to

5  which Perfect 10 sent its DMCA notices at issue in this case.

6      6.     It is important to understand how our dedicated servers services work.

7  Our customers assume control of their servers configured with only essential

8  systems software. Each customer then installs its own proprietary software and

9  content on its server, after which each customer operates its servers in conducting

10  whatever services the customer offers to its clientele. The customer may choose to

11  host on this server a website for itself or for others or it may choose to perform

12  other tasks with its server, iWeb Technologies does not control this. In short, iWeb

13  Technologies' role starts and ends at the customer's server in Montreal, much like a

14  warehouse or building exclusively leased to a customer conducting its own

15  business. iWeb Technologies does not move, ship, or transfer the server or its

16  contents, change or otherwise modify the contents, or deal in any way with the

17  customer's customers. The Internet connectivity provided is simply an entry point

18  to the Internet, it is up to the customer to decide how, when, to what extent and to

19  which location content will be sent (if any). In short, iWeb Technologies'

20  operations are fixed in Montreal where the customer's server resides. Any

21  transmission of data, to or from the customer's server, are completely and

22  exclusively within the customer's control. Similarly, any hosting or other services

23  offered by the customer to or from its Montreal-fixed server are conducted beyond

24  the knowledge or control of iWeb Technologies.

25      7.     We offer a variety of server maintenance plans and arrangements, as

26  noted on our website at www.iweb.com, but with all such plans and arrangements,

27  the customer exclusively owns and controls the data and applications software on

28  such servers. iWeb Technologies only has a limited support role in connection with

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   the server itself.

2       8.      We have no employees, equipment, facilities of any kind anywhere in

3   California. We do not have any server farm outside of the Montreal region. .

4   Further, we provide no dedicated server, co-location, hosting or other services in

5   California or the United States, as all such services are provided exclusively in

6   Montreal at our facilities. Further, we host and maintain our own website in

7   Montreal, Quebec, Canada, and all our customers thus communicate with us by

8   accessing our Montreal website or calling us by telephone in Montreal. Finally,

9   iWeb Technologies does not share any revenues or otherwise benefit from the

10  activities of any such customers' websites.

11      9.      I read in Perfect 10's complaint the allegation that iWeb owns or

12  operates one or more data centers or cluster of websites in San Diego or more

13  generally in California. This is incorrect. iWeb Technologies does not, directly or

14  indirectly (through affiliates, joint venture partners, or otherwise) operate, own or

15  control any data center or cluster of websites located in the State of California,

16  including in San Diego County, nor has it done so at any point in the past.

17      10.     We serve customers from a wide range of countries and all of these use

18  our servers in the Montreal region.

19      11.     I have carefully reviewed Perfect 10's complaint. Although Perfect 10

20  earlier sued New Dream Network, and incorrectly alleged that company was an

21  iWeb customer, it recently dismissed New Dream Network, and has now agreed it

22  made such customer allegations in error. Perfect 10 continues, however, to advance

23  erroneous allegations, or those that cannot be scrutinized for accuracy, including its

24  allegations that iWeb sells hosting services to websites operators who infringe and

25  by offering hosting services to others. As I explained, dedicated server and

26  colocation services do not involve any iWeb company hosting or otherwise

27  operating any such websites. Any such hosting or operation is done by those

28  companies which control the servers, which are only based in iWeb Technologies'

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Montreal facilities.

2      12.    The flurry of DMCA notices sent by Plaintiff do not involve any

3  server or content located in California; rather, to the extent such notices even

4  involve our customers, such notices involve the activities on the customer's

5  hardware based at our Montreal facilities. Means to contact such customers are

6  readily available to Perfect 10 or any other entity seeking DMCA or any other

7  redress. See Exhibit 2 attached for a sample DMCA Agent listed by

8  imagevenue.com cited by Perfect 10 at Paragraph 9 of its complaint. Since we have

9  no operational control over any customer's server, including each customer's

10 installed application software and content, we have no control over or access to the

11 websites or activities of any such customer.

12     13.    Perfect 10 suggests, in its complaint that some websites hide their real

13 addresses. In fact, such private domain registrations are perfectly legitimate efforts

14 to avoid spammers. Even Perfect 10's law firm in this action uses just such a

15 private domain registration. Of course, any communication sent to such private

16 domain registration services, like Network Solutions, is forwarded to the website's

17 private address.

18     14.    I have also noted that Perfect 10 claims iWeb Technologies and its

19 affiliated companies operate as a single entity. Actually, the three iWeb companies

20 have distinctly different roles and support such separate missions by observing

21 correct Canadian Federal and Provincial requirements. Specifically, iWeb

22 Technologies is the company that maintains the Montreal-based facilities where its

23 customers operate servers. iWeb Intellectual Property Inc., exists only to hold a

24 software license. iWeb Group is simply a holding company that owns the shares of

25 iWeb Technologies and iWeb Intellectual Property. Such structures are common for

26 Canadian companies.

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TOUPIN DECL. ISO DEFENDANTS' RULE          4          CASE NO. 13 CV 0328 BTM BLM
12(b)(2), 12(b)(3) & 12(b)(6) MOTION TO
DISMISS



1    I declare under penalty of perjury under the laws of the United States of

2    America that the foregoing is true and correct.

3        Executed this 22nd day of April 2013.

4

5                                            Pierre-Luc Toupin

6    LIT/1356468.3

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO