ANDREW P. BRIDGES (CSB No. 122761)
ILANA S. RUBEL (CSB No. 221517)
LIWEN MAH (CSB No. 239033)
KATHLEEN LU (CSB No. 267032)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:   415.875.2300
Facsimile:   415.281.1350

WILLIAM H. SHAWN, *PRO HAC VICE*
JAMES E. KING (CSB NO. 90103)
SHAWNCOULSON, LLP
1850 M St., NW. Suite 280
Washington, DC 20036
Telephone: (202) 331-7900
Facsimile: (202) 403-3747

Attorneys for Defendants
IWEB GROUP, INC.,
IWEB INTELLECTUAL PROPERTY, INC.,
and IWEB TECHNOLOGIES, INC

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation, <br><br>             Plaintiff, <br><br>     v. <br><br> IWEB GROUP, INC., a Canadian company d/b/a/ iWeb.com; IWEB INTELLECTUAL PROPERTY, INC., a Canadian company d/b/a iWeb.com; IWEB TECHNOLOGIES, INC., a Canadian company d/b/a/ iWeb.com; and DOES 1 through 100, inclusive <br>             Defendants. | Case No. 13 CV 0328 BTM BLM <br><br> **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** <br><br> Judge:   Hon. Barry Ted Moskowitz <br> Court:   15B <br> Date:    June 28, 2013 <br> Time:   11:00 A.M. <br><br><br> NO ORAL ARGUMENT UNLESS REQUESTED BY COURT |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    MINIMUM CONTACTS FOR JURISDICTION ARE ABSENT. ................ 2

    A.    California Customers Do Not Establish General Jurisdiction. ............. 2

    B.    Arms-Length Customer Relationships with Purported
       Infringers Do Not Establish Specific Jurisdiction. ............................... 3

    C.    Not Only Does Perfect 10's "Evidence" Fail to Meet Its
       Burden to Establish Personal Jurisdiction, It Is Also
       Unreliable. ........................................................................................... 4

    D.    Jurisdiction Is Not Proper Under Rule 4(k)(2). .................................. 5

II.   P10 HAS LITIGATED IN CANADA AND COULD DO SO
    AGAIN. ......................................................................................................... 5

III.  VENUE IS IMPROPER IN THE SOUTHERN DISTRICT ........................ 6

IV.   P10 PLED NO VOLITIONAL ACT OF DIRECT
    INFRINGEMENT. ....................................................................................... 6

    A.    P10 Alleges Nothing But Passive, Automated Conduct. ..................... 6

    B.    The Complaint Does Not Allege Distribution of Material
       Objects .................................................................................................. 7

V.    P10 INSUFFICIENTLY PLED INTENTIONAL INDUCEMENT
    OR ENCOURAGEMENT OF OTHERS TO INFRINGE ............................ 8

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agee v. Paramount Commc'ns, Inc.,*
  59 F.3d 317 (2d Cir. 1995) ................................................................ 8

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,*
  293 F.3d 707 (4th Cir. 2002).............................................. 1, 3, 4, 5

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................... 8, 10

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.,*
  536 F.3d 121 (2d Cir. 2008), *cert. denied* 129 S. Ct. 2890 (2009) .................... 6

*Columbia Pictures Indus., Inc. v. Fung,*
  710 F.3d 1020 (9th Cir. 2013) ............................................... 9, 10

*CoStar Group, Inc. v. LoopNet, Inc.,*
  373 F.3d 544 (4th Cir. 2004) ................................................. 6, 7

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.,*
  711 F. Supp. 2d 1074 (C.D. Cal. 2010)......................................... 5

*Goodyear Dunlop Tires Operations, S.A. v. Brown, U.S.,*
  131 S. Ct. 2846 (2011) ................................................................ 3

*Hotaling v. Church of Jesus Christ of Latter-Day Saints,*
  118 F.3d 119 (4th Cir. 1997) ................................................... 8

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,*
  658 F.3d 936 (9th Cir. 2011) ................................................. 9, 10

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*
  647 F.3d 1218 (9th Cir. 2011) ............................................... 2, 4

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
  545 U.S. 913 (2005) ................................................................ 8

*N.Y. Times Co. v. Tasini,*
  533 U.S. 483 (2001) ................................................................ 8

*NationalEFT, Inc. v. Checkgateway, L.L.C.,*
  No. 12-cv-1498, 2013 WL 593759 (S.D. Cal. Feb. 15, 2013)....................... 2, 3, 4

*Perfect 10, Inc., v. Giganews, Inc.,*
  No. 11-cv-905, 2011 U.S. Dist. Lexis 157429 (S.D. Cal. Aug. 25, 2011) .......... 6

*Perfect 10, Inc. v. Amazon.com, Inc.,*
  508 F.3d 1146 n.6 (9th Cir. 2007)....................................... 7, 8, 9, 10

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. 11-7098, 2013 WL 2109963 (C.D. Cal. Mar. 8, 2013) ........................ 2, 6, 7

*Religious Tech. Ctr. v. Netcom On-line Commc'n Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ............................................................ 6, 7

*Shrader v. Biddinger*,
    633 F.3d 1235 (10th Cir. 2011) ...................................................................... 4

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ......................................................................................... 9

*TH Weiss, Inc. v. Newland N. Am. Foods, Inc.*,
    No. 13-1079, 2013 U.S. Dist. LEXIS 20039 (N.D. Ill. Feb 13, 2013) ............... 6

**STATUTES**

17 U.S.C. § 101 ....................................................................................................... 8

17 U.S.C. § 106(3) .................................................................................................. 7

17 U.S.C. § 201(c) .................................................................................................. 8

28 U.S.C. § 1391(c)(3) .......................................................................................... 6

**RULES**

Fed. R. Civ. P. 4(k)(2) ............................................................................................ 5

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    If Plaintiff ("P10") truly sought to stop unauthorized use of its images, it

2    would have sent DMCA notices to the website operators that allegedly host the

3    infringing images—as iWeb Technologies ("iWeb") suggested after P10 contacted

4    it. But P10 does not pretend it ever notified those who actually control the websites.

5    P10 instead seeks a windfall by staging claims against Defendants, who do not

6    direct the content of those sites, in hopes that the cost and burden of litigating in a

7    distant, foreign jurisdiction will force Defendants to pay P10 off.  As P10 has

8    neither a jurisdictional nor a substantive basis for its claims, this gambit fails.

9    P10 seeks to hold iWeb liable for the actions of its customers and its

10   customers' customers.  iWeb is a Canadian company that maintains computer

11   servers only outside the United States, in Montreal, Canada. Over 20,000 customers

12   worldwide operate these servers dedicated *for their own use*.  iWeb itself does not

13   develop or run any website P10 accuses of infringement (iWeb's own website is

14   merely a storefront for its server service).  iWeb's offices, employees, and facilities

15   are solely in Montreal, Quebec, Canada.  Toupin Decl. (Dkt. 14-5) ¶¶ 5-8.  P10

16   alleges that iWeb *customers* who access iWeb servers in Montreal operate, or resell

17   to those that operate, websites that allegedly copied P10's pornographic images—

18   without iWeb's foreknowledge.

19   In addition, no personal jurisdiction exists over Defendants because iWeb is

20   an Internet service provider ("ISP") that merely provides servers and bandwidth to

21   persons that P10 accuses of disseminating infringing works, *see ALS Scan, Inc. v.*

22   *Digital Serv. Consultants*, *Inc.,* 293 F.3d 707, 709, 715 (4th Cir. 2002), and the

23   other Defendants have no servers.  P10 muddies the waters by refusing to withdraw

24   allegations it knows to be false or unreliable, including false claims about now-

25   dismissed New Dream Network ("NDN") and the false claim, based on a defunct

26   Ukrainian website, that iWeb has a California data center.  Other than this

27   misinformation and mischaracterizations in P10's declarations (*see* Defendants'

28   Evidentiary Objections), P10 does not show Defendants have sufficient contacts in

Fenwick & West LLP
Attorneys at Law
San Francisco

this district or anywhere in the United States for personal jurisdiction.

P10 also fails to plead a basis for substantive liability. P10 does not plead the volitional conduct that courts—including the most recent court to dismiss P10 claims against an ISP, *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-7098, 2013 WL 2109963, at *6 (C.D. Cal. Mar. 8, 2013)—have required for a claim of direct infringement. P10 instead incorrectly argues that passive automated processes make ISPs liable. But iWeb neither chooses nor controls any purported copying by its customers, and without any plausible facts showing that iWeb intended for infringement to occur, P10 fails to state a claim for contributory infringement. P10 tries to stretch the law to make *any* provider of general services liable if some downstream customer infringes, an absurd theory that would even make *power companies liable for not turning the power off to any company accused of infringement*. The Court need not accept P10's absurd argument.

## I.   MINIMUM CONTACTS FOR JURISDICTION ARE ABSENT.

*Even if Perfect 10's allegations about Defendants' business were all true*— which they are not—no personal jurisdiction exists.

### A.   California Customers Do Not Establish General Jurisdiction.

No general jurisdiction exists over a defendant unless its contacts with the forum are so extensive that they "approximate physical presence." *See NationalEFT, Inc. v. Checkgateway, L.L.C.*, No. 12-cv-1498, 2013 WL 593759, at *4 (S.D. Cal. Feb. 15, 2013) (holding that business with 1,000 California merchants, including plaintiff, was insufficient for jurisdiction). California-based contracts and revenue signify "doing business with California, but not necessarily doing business in California," especially where a defendant has "no offices, real property, or staff in California, is not licensed to do business in California, and pays no California taxes." *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1222, 1226 (9th Cir. 2011) (finding no general jurisdiction over out-of-state website operator that allegedly posted infringing celebrity photos). Even "numerous and

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  repeated electronic connections" with persons in the forum state do "not add up to

2  the quality of contacts necessary" for jurisdiction. *ALS Scan*, 293 F.3d at 709, 715

3  (finding no jurisdiction over ISP that provided bandwidth to customers who posted

4  infringing images to their websites).  Thus, even accepting P10's assertions that

5  iWeb does extensive business with California entities, no general jurisdiction exists.

  **B.** **Arms-Length Customer Relationships with Purported Infringers**

7      **Do Not Establish Specific Jurisdiction.**

8     On facts mirroring those here, the court in *ALS Scan* also found no specific

9  jurisdiction. *See id.* at 709. There, as here, the plaintiff alleged that the defendant

10  ISP enabled customers to publish infringing images online by providing them with

11  the bandwidth for operating their websites. *See id.* But the ISP, like iWeb, only had

12  an "arms-length customer relationship" with the alleged infringers, did not select

13  the images, and received no income from the websites' subscribers. *See id.* The role

14  of the ISP, like iWeb, was "at most passive" because it did not transmit the

15  infringing photographs "specifically to [the forum state] with the intent of engaging

16  in business or any other transaction in [the forum state]," so no jurisdiction existed

17  regardless of whether the ISP continued to enable the websites after receiving

18  notice of their infringement.[1] *See id.* at 714-15.

19     Nor do allegations and evidence that a defendant "does business with

20  California businesses unrelated to the [claim] at issue" confer specific jurisdiction.

21  *See NationalEFT*, 2013 WL 593759, at *9. "[S]pecific jurisdiction is confined to

22  adjudication of issues deriving from, or connected with, the very controversy that

23  establishes jurisdiction." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v.*

24  *Brown, U.S.*, 131 S. Ct. 2846, 2851 (2011)).  Here, any customer relationships that

25  iWeb has in the United States are immaterial because P10 does not, and cannot,

26  plead that iWeb entered into them to further infringement on its customers'

---

[1] P10 conflates third-party websites with iWeb's business website, which like that
of the ISP in *ALS Scan* is unrelated to Plaintiff's claim because it "was not involved
in the publication of any infringing photographs." *See ALS Scan,* 293 F.3d at 715.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  websites.  *See id.*  Mere foreseeability that such customer relationships could injure

2  a plaintiff is insufficient for jurisdiction.  *See id.*; *see also Shrader v. Biddinger*, 633

3  F.3d 1235, 1241 (10th Cir. 2011) ("maintenance of a web site does not in and of

4  itself subject the owner or operator to personal jurisdiction, even for actions relating

5  to the site, simply because it can be accessed by residents of the forum state").

6        Finally, iWeb is wholly different from the *Mavrix* defendant, a website *owner*

7  that itself published allegedly infringing photos on a website accessible to users in

8  the forum state.  *See Mavrix*, 647 F.3d at 1228. In contrast, iWeb's customers (or

9  their customers), not iWeb, allegedly posted P10's photos.

##### C.   Not Only Does Perfect 10's "Evidence" Fail to Meet Its Burden to Establish Personal Jurisdiction, It Is Also Unreliable.

12        Even if iWeb customers in the United States infringed as P10 alleges,

13  jurisdiction over iWeb is absent, *see ALS Scan*, 293 F.3d at 715, so jurisdictional

14  discovery is unwarranted. P10 admits that the alleged infringement, as in *ALS Scan*,

15  is on "third-party" websites. *See id.* (finding no jurisdiction based on ISP's passive

16  transmission of infringing photos into forum state); Opp. at 7:19.

17        Lacking any factual basis to allege that iWeb ran the allegedly infringing

18  websites or intended that they infringe, P10 instead invents falsehoods about iWeb

19  and proffers immaterial and unreliable "evidence" about its customers.  P10's

20  Opposition entirely avoids the Complaint's false allegation that iWeb controls or

21  owns a San Diego data center. Compl. ¶ 7; Mot. at 5:6-21.  Likewise, by dismissing

22  NDN, P10 conceded that its allegations about NDN being an iWeb reseller in

23  California were false.  iWeb may do business *with* Californians, but P10 cannot

24  truthfully allege that iWeb does business *in* California (or the United States) to

25  establish jurisdiction. Toupin Decl. ¶ 8; *see NationalEFT*, 2013 WL 593759, at *9.

26        P10 misleadingly calls allegedly infringing third-party websites stored on

27  Montreal servers "California based" (Compl. ¶ 8). P10 does not allege that those

28  specific customers (*e.g.*, iNetReady or KT Tran, Opp. at 5:2-6) participated in any

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    infringement. But even if they were to have done so, whether operators or viewers

2    of infringing websites are in California or the United States is irrelevant—the

3    automated computer functions of a passive ISP whose servers store or transmit data

4    do not create jurisdiction.  *See ALS Scan*, 293 F.3d at 715.  The location of

5    operators or viewers is relevant only to jurisdiction over *them*, but P10 chose not to

6    pursue any parties actually responsible for the alleged infringing acts.

7         **D.    Jurisdiction Is Not Proper Under Rule 4(k)(2).**

8         Even assuming that P10's factual allegations were true, Rule 4(k)(2) does not

9    establish jurisdiction. "The due process analysis under Rule 4(k)(2) is identical to

10   the traditional personal jurisdiction analysis, however, the contacts are measured

11   with respect to the United States rather than an individual forum state." *EcoDisc*

12   *Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1087 (C.D.

13   Cal. 2010) (finding no jurisdiction in California or under Rule 4(k)(2) where the

14   defendant's alleged "aggregated contacts with the United States are no greater than,

15   and not meaningfully different from, its contacts with California"). Here, P10's

16   allegations about iWeb's contacts with the United States are as attenuated as its

17   allegations about iWeb's California contacts, based solely on iWeb doing business

18   with American companies (*e.g.*, "Communication Networks" and credit card

19   processors) or customers (Compl. ¶¶ 9-11). P10 cannot allege that iWeb in Montreal

20   has any more relevant contacts in the United States than in California, so no

21   jurisdiction under Rule (4)(k)(2) exists.

22   **II.   P10 HAS LITIGATED IN CANADA AND COULD DO SO AGAIN.**

23        As to *forum non conveniens*, P10 sued in Canada before and makes no

24   showing that it cannot do so again. Canada is the suitable forum, since the records

25   and acts of copying, if any, are on servers there. The iWeb witnesses who could

26   testify about those records and copying are in Canada.  P10 has previously insisted

27   on litigating in Canada, even with a parallel case pending in the United States.

28   There is no language barrier, and Canadian courts may apply United States law just

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   as United States courts often apply foreign laws.

2   ### III.   VENUE IS IMPROPER IN THE SOUTHERN DISTRICT.

3   Section 1391(c)(3) on venue "cannot (and is not intended to) override the

4   constitutional constraints that govern the propriety of asserting personal jurisdiction

5   over a defendant." *TH Weiss, Inc. v. Newland N. Am. Foods, Inc*., No. 13-1079,

6   2013 U.S. Dist. LEXIS 20039, at *2 (N.D. Ill. Feb 13, 2013).  While iWeb is not

7   subject to jurisdiction anywhere in the United States for P10's claims, P10 tacitly

8   concedes that venue here is improper and does not object to transfer to the Central

9   District, where this Court previously transferred another case because of P10's lack

10  of connection with this District. Opp. at 3:13-14; *Perfect 10, Inc., v. Giganews, Inc.*,

11  No. 11-cv-905, 2011 U.S. Dist. Lexis 157429 (S.D. Cal. Aug. 25, 2011).

12  ### IV.   P10 PLED NO VOLITIONAL ACT OF DIRECT INFRINGEMENT.

13  P10 concedes that Defendants do not engage in any volitional acts that

14  directly infringe either the reproduction or public display rights; it argues only that

15  iWeb "distributes" infringing images.  *See* Opp. at 15.  But P10 fundamentally

16  misunderstands both the volition requirement and the Copyright Act's definition of

17  the copyright owner's exclusive "distribution" right.

18  ### A.   P10 Alleges Nothing But Passive, Automated Conduct.

19  P10 incorrectly claims that there is no volition requirement to direct

20  infringement.  Courts of Appeals that have squarely examined the issue, the Second

21  and Fourth Circuits, require volitional conduct, and it is a longstanding doctrine of

22  copyright law that emanated from *Religious Tech. Ctr. v. Netcom On-line Commc'n

23  Servs., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995), a case from this Circuit.[2]  *Cartoon

24  Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008), *cert.

25  denied* 129 S. Ct. 2890 (2009); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544,

26  551 (4th Cir. 2004); *see also Giganews*, 2013 WL 2109963, at *6 (listing cases

27  ——————————
28  [2] As the court in *Giganews* noted, the Ninth Circuit's silence thus far on the volitional requirement does not indicate disapproval. 2013 WL 2109963, at *7.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

following *Netcom*)).  The Fourth Circuit specifically held that failure to remove an allegedly infringing image is *not* a volitional act.  *LoopNet*, 373 F. 3d at 556.

P10 is thus incorrect that a defendant's "refusal to remove identified infringing material from [its] servers and continue to directly distribute those images is clearly a volitional act" (Opp. at 15:19-20).  P10 cites *Perfect 10, Inc. v. Amazon.com, Inc.*, but there the Ninth Circuit explicitly disclaimed:  "[W]e do not address whether an entity that merely passively owns and manages an Internet bulletin board or similar system violates a copyright owner's display and distribution rights when the users of the bulletin board or similar system post infringing works."  508 F.3d 1146, 1160 n.6 (9th Cir. 2007).

What P10 actually alleges is "[w]hen an *individual user* . . . clicks on a link to access a particular image file, a request is sent to the server for that image file[.]"  Opp. at 15:11-13; *see also* Opp. at 18:11-14 (arguing that a *user's* uploading and downloading of copyrighted content violates P10's distribution and reproduction rights respectively).  P10 does not, and cannot, allege that iWeb did anything but provide servers. A user's act leads to the alleged copying onto its dedicated server. This is not a volitional infringing act attributable to iWeb. *See Giganews*, 2013 WL 2109963, at *7 (finding no volition in providing virtual machines "that some [] users have used to create illegal copies").  And even if, *arguendo*, iWeb's conduct is deemed volitional, it was extraterritorial, since all iWeb operations and personnel are in Canada (Toupin Decl. ¶ 5), something P10 no longer appears to dispute.

**B.    The Complaint Does Not Allege Distribution of Material Objects.**

P10 argues a different construction of the "distribution" right from what the Copyright Act defines, which is the right "to distribute *copies or phonorecords* of the copyrighted work to the public *by sale or other transfer of ownership, or by rental, lease, or lending*." 17 U.S.C. § 106(3) (emphasis added).  "Copies" are "*material objects*, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

reproduced, or otherwise communicated, either directly or with the aid of a machine

or device."  § 101 (emphasis added).  Transmission of works over the Internet does

not fall within this definition, as there is no *transfer of ownership* of the *material*

*objects* (*i.e.*, the physical servers) containing the work.  *See Agee v. Paramount*

*Commc'ns, Inc.*, 59 F.3d 317, 325 (2d Cir. 1995) (broadcast transmission not a

distribution because no material object changes hands).  P10 cites no case that holds

otherwise.  In *Amazon.com*, though the court considered in *dictum* whether the

Supreme Court in *N.Y. Times Co. v. Tasini*, 533 U.S. 483 (2001), indicated that an

electronic transmission could constitute a public distribution, the court found that

the defendant never had the material objects in the first place and therefore could

not possibly have distributed them.  *Amazon.com*, 508 F. 3d at 1162.  The *Tasini*

statement itself is *dictum*, as the only question was whether Section 201(c)'s

collective works rule applied, and the Court never examined the "material objects"

requirement of 17 U.S.C. § 101.  533 U.S. at 487-88.  *Hotaling v. Church of Jesus*

*Christ of Latter-Day Saints*, on the other hand, involved *lending* of a *physical copy*

of the work at issue.  118 F.3d 119, 203 (4th Cir. 1997).  Defendants undisputedly

do not distribute any material objects, and the Court need not accept P10's

groundless legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## V.    P10 INSUFFICIENTLY PLED INTENTIONAL INDUCEMENT OR ENCOURAGEMENT OF OTHERS TO INFRINGE.

P10 mischaracterizes the law of contributory infringement.  The Supreme

Court definitively stated in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*:

"One infringes contributorily by intentionally inducing or encouraging direct

infringement."  545 U.S. 913, 930 (2005).  The classic example of intentional

inducement or encouragement is advertising an infringing use, something P10 has

not pled.  *Id.* at 935.  Contrary to P10's assertion, the Supreme Court has never

adopted an alternative, distinct test of "knowledge of infringement and material

contribution."  Opp. at 17:6-10.  After *Grokster*, the Ninth Circuit explained that a

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

court may *impute* intent to induce or encourage when a defendant "knowingly takes steps that are substantially certain to result in such direct infringement," but it did not eliminate *Grokster*'s intent requirement. *Amazon.com*, 508 F.3d at 1171.

P10 ignores the Ninth Circuit's most recent jurisprudence on contributory liability. In *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1038 (9th Cir. 2013), the Ninth Circuit analyzed *Grokster* and *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), and re-emphasized that "proper proof of the defendant's intent that its product or service be used to infringe copyrights is paramount." Unlike the plaintiff in *Fung*, P10 has pled no facts that iWeb provided its services "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." *See id.* at 1034. The *Grokster* rule "requires a high degree of proof of the improper object." *See id.* "[M]ere knowledge of infringing potential or of actual infringing uses" is insufficient. *Id.* Further, "in the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement." *Id.* at 1035. P10 fails to allege any clear expression or other affirmative acts that constitute such evidence of intent.

The circumstances in *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2011) are not "almost identical" as P10 claims (Opp. at 16:10). *Akanoc* concerned two web hosting companies, one of whom (MSG) the Ninth Circuit held *not* liable even though each company's manager knew of the alleged infringement by websites on their servers. *Id.* at 942. MSG owned the servers in question, which it leased, along with bandwidth and IP addresses, to Akanoc for web hosting. *Id.* Citing *Amazon.com*, the court in *Akanoc* noted that an ISP's intent to contribute to infringement can be imputed. *Id.* at 943. But in *Amazon.com*, the Ninth Circuit held that such imputation requires that the defendant "has *actual* knowledge that *specific* infringing material is available using its system, and can take *simple* measures to prevent further damage to copyrighted

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

works, yet continues to provide access to infringing works." *Amazon.com*, 508 F.3d at 1172 (emphasis added) (internal quotation marks and citations omitted). Accordingly, MSG was not contributorily liable because it lacked "reasonable means to withdraw services to the direct infringers," *Akanoc*, 658 F.3d at 942, *even though MSG could have physically pulled the plug or stopped leasing servers to Akanoc.* Here, P10's conclusory allegation that Defendants could have taken "simple" measures to stop infringement (Compl. ¶ 28), has no plausible factual basis in the Complaint. Without its wild (and abandoned) allegations regarding NDN (*see* Opp. at 1, n.1; Dkt. No. 8) , P10 alleges nothing more than that Defendants, like MSG, own and make available servers to others who may use them properly or improperly. A complaint with "naked assertion[s] devoid of further factual enhancement" is insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quotation marks omitted). P10 does not allege any "simple" method by which Defendants could have removed the images at issue.[3]

The Court should dismiss the Complaint on both jurisdictional and substantive grounds.

Dated:    June 20, 2013          FENWICK & WEST LLP

                                 By: */s/ Andrew P. Bridges*
                                 Andrew P. Bridges
                                 Attorneys for Defendants
                                 IWEB GROUP, INC.,
                                 IWEB INTELLECTUALPROPERTY, INC.,
                                 and IWEB TECHNOLOGIES, INC.

---

[3] P10 chided Defendants for failure to cite *Akanoc*. But *Akanoc* did not itself cite the controlling *Grokster* decision, and the Ninth Circuit's recent decision in *Fung* did not refer at all to *Akanoc*. *Grokster* and *Fung* supply the current standards.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO